UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD ROBINSON (2017-00003875), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-1761 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| E.R.T. HAYES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harold Robinson got in a fight with another inmate at the Will County Adult Detention Facility. Edward Hayes, a deputy correctional officer, jumped into the fray and broke things up. But he didn't just break up the fight – he broke a few of Robinson's fingers, too. And his hand.

After filing a few grievances, Robinson filed this lawsuit, alleging that Hayes had used excessive force. But his trip to the federal courthouse came too soon. Robinson failed to exhaust the administrative remedies available to him at the jail. He did not submit a grievance about Hayes within the prescribed time period, and did not appeal the denial of any of his grievances, either.

Robinson did not take full advantage of the procedures available to him at the facility. He jumped the gun and skipped a step by coming straight to the courthouse. For that reason, the Court grants Defendant Hayes's motion for summary judgment.

**Non-Compliance with the Local Rules**

Before diving into the facts, the Court pauses to call attention to Robinson's failure to comply with the Local Rules. The punchline is that the Court adopts the facts offered by Defendant Hayes because Robinson did not respond to Hayes's evidence with evidence of his own.

Local Rule 56.1 governs motions for summary judgment. The moving party must file a statement of material facts and must attach the "cited evidentiary material." *See* L.R. 56.1(a)(2). That statement of facts "must consist of concise numbered paragraphs," and each fact "must be supported by citation to the specific evidentiary material . . . that supports it." *See* L.R. 56.1(d)(1), (2).

The Local Rules also explain how the non-moving party must respond. The non-moving party must file a response to each numbered paragraph in the moving party's statement, including "citations to the supporting evidentiary material." *See* L.R. 56.1(e)(1). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *See* L.R. 56.1(e)(3). Raw denials don't cut it.

A failure to comply with the Local Rules has straightforward consequences. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* So, "[i]f a party fails to respond to the Rule 56.1 statement of uncontested facts, those facts are deemed admitted to the extent they are supported by the evidence in the record." *Ralston v. Rauner*, 2022 WL 3700830, at *1 (N.D. Ill. 2022); *see also Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010).

Hayes supported his motion for summary judgment by filing a statement of facts that complied with the Local Rules. Hayes offered specific facts, supported by citations to evidence in the record. *See* Def.'s Statement of Facts (Dckt. No. 78).

Hayes also complied with Local Rule 56.2 by serving Robinson with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." That notice explained in detail how to respond to the motion for summary judgment in a way that complies with the Local Rules. *See* Notice (Dckt. No. 79).

Robinson, on the other hand, did not comply with the Local Rules. He filed a short response to the motion for summary judgment, but he filed no response to Hayes's statement of material facts. Instead, he purported to "incorporate by reference his Statement of Material Facts" in his initial complaint. *See* Pl.'s Response to Mtn. for Summ. Judgment, at ¶ 22 (Dckt. No. 81).

Allegations are not facts, and accusations are not evidence. Allegations suffice at the pleading stage, when a plaintiff's say-so is enough to get to the next stage. But the rubber meets the road at the summary judgment stage. Summary judgment is the time for evidence, not accusations. Summary judgment is the time for the non-moving party to put his evidentiary cards on the table, and reveal if he has the goods. Allegations in a complaint are no substitute for facts in the record.

Robinson came forward with allegations, not evidence, so he did not comply with the Local Rules. As a result, this Court accepts all properly supported facts offered by Hayes. *See* L.R. 56.1(e)(3). Basically, only one side came forward with evidence, and that evidence is unrebutted, so the Court accepts it.

The fact that Robinson is *pro se* does not excuse his failure to comply. The Local Rules apply to everyone, including *pro se* litigants. *See Williams v. Moffett*, 2021 WL 825670, at *2 (N.D. Ill. 2021) ("Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1."). Robinson also received a special notice explaining how to comply, so he knew the Rules. He simply didn't comply with them.

There is one other wrinkle. Hayes moved for summary judgment based on a lack of exhaustion, and sometimes that argument requires an evidentiary hearing (called a *Pavey* hearing). *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). But here, Robinson has not asked this Court to conduct a *Pavey* hearing to resolve any disputed facts. And, in any event, "the Court need not hold a hearing where it can resolve the question of [PLRA] exhaustion based on affidavits and documentary evidence." *McDonald v. Henze*, 2022 WL 279587, at *3 (N.D. Ill. 2022) (citing *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015)). The Court can do so here.

With all that in mind, the Court turns to the facts of the case.

## Background

Harold Robinson is a pretrial detainee at the Will County Adult Detention Facility ("WCADF"), where he has been waiting for a state criminal trial since 2017. *See* Def.'s Statement of Material Facts, at ¶ 1 (Dckt. No. 78).

On October 26, 2018, Robinson got in a scuffle with a fellow detainee. Defendant Edward Hayes – a deputy correctional officer – was on duty that day and responded to the fight as part of the Emergency Response Team. *Id.* at ¶ 8.

When Hayes reached the two men, he found them wrestling on the ground, with Robinson on top. *Id.* at ¶¶ 6–7. To break it up, Hayes grabbed Robinson's right hand and put it

behind his back, right above his hips – almost like he was going to handcuff him. *Id.* Robinson then felt a "snap" in his fingers and screamed in response. *Id.* at ¶ 11.

Robinson's right hand and fingers quickly began to swell. *Id.* at ¶ 12. The next day, doctors at St. Joseph's Hospital examined his injuries. *Id.* Robinson was not admitted to the hospital, and he returned to WCADF later that day. *Id.* But eventually, he needed surgery to fix several broken bones. In May 2019, he had two plates and more than a dozen screws placed in his right hand. *See* Robinson Dep., at 27:4-15 (Dckt. No. 78-1).

Throughout late 2018 and early 2019, Robinson used WCADF's grievance system to file several complaints about his injury. That grievance process requires a bit of explanation.

To file a grievance at WCADF, a detainee must fill out a form (called a "Form 22") and submit it within 48 hours of the alleged misconduct. *See* Def.'s Statement of Material Facts, at ¶ 32 (Dckt. No. 78). If, for whatever reason, the detainee files the grievance after the 48-hour window has closed, the detainee must give an explanation for the delay in the Form 22. *Id.* at ¶ 33. If a detainee cannot fill out a form on his own, WCADF will help. *Id.* at ¶ 34.

From there, the form makes its way to the Classification Office, where officials give it a date stamp and issue a written response (usually within 15 days). *Id.* at ¶¶ 31, 37. The final step in exhausting the grievance process is the appeal. After receiving a response, detainees have two days to file an appeal challenging the decision. *Id.* at ¶ 38.

To sum it up, a detainee at WCADF must complete a few steps. The detainee must file a grievance at the facility within 48 hours of the alleged misconduct, and must file an appeal (again, within 48 hours). "It is beyond dispute that WCADF's grievance process include[s] a 'grievance level' step and an 'appeal level' step." *See Harris v. Coopes*, 2019 WL 2435847, at *3 (N.D. Ill. 2019) (collecting cases).

5

One month after the incident with Deputy Hayes, Robinson filed a grievance through WCADF's grievance process to complain about his hand. *See* Def.'s Statement of Material Facts, at ¶ 15 (Dckt. No. 78). That complaint discussed the status of Robinson's injured hand and requested surgery. *See* Robinson Dep., at 39:24 – 40:11 (Dckt. No. 78-1). The grievance seems to be absent from the record, but at his deposition, Robinson couldn't recall if it mentioned Hayes at all. *Id.* at 40:12-15. Robinson acknowledged that he received a response from WCADF two days later. *See* Robinson Interrogatories, at ¶ 2 (Dckt. No. 78-4).

A month later, in December 2018, Robinson filed two more grievances seeking additional medical care for his hand. *See* Def.'s Statement of Material Facts, at ¶ 16 (Dckt. No. 78). None of those grievances specifically claimed that Deputy Hayes was responsible for Robinson's broken hand. *See* Inmate Request Form 22s, at 15–16 of 19 (Dckt. No. 78-3).

On January 3, 2019, Robinson filed yet another grievance and, for the first time, blamed Hayes for his injuries. That 2019 grievance requested medical care, and suggested that Hayes was responsible for his broken fingers. *Id.* at 17 ("I still have not been seen by [an] orthopedic surgeon regarding my broken bones that I sustained here by E.R.T. Hayes."). By that point, more than two months had passed since the incident (on October 26).

Two more grievances followed, with similar allegations. *Id.* 18–19. The jail ruled on all of the grievances. *Id.* But Robinson never appealed any of them.

In March 2020, Robinson filed this lawsuit, alleging that Deputy Hayes had used excessive force when responding to the brawl in October 2018. *See* Second Am. Cplt., at 4 (Dckt. No. 45). Robinson sued a number of other defendants, too, but this Court later dismissed them.[1]

---

[1] Robinson also brought claims against other defendants alleging excessive use of force, but this Court dismissed the claims against those defendants. *See* 4/11/22 Minute Entry (Dckt. No. 65). Robinson also

After discovery, Hayes moved for summary judgment. *See* Def.'s Mtn. for Summ. Judgment (Dckt. No. 76). Hayes argues that his use of force was objectively reasonable, and that he is entitled to qualified immunity. Most importantly for present purposes, Hayes argues that Robinson failed to exhaust his administrative remedies before filing suit in federal court. *See* Def.'s Mem. in Support of Mtn. for Summ. Judgment, at 3–9 (Dckt. No. 77).

**Legal Standard**

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in

---

sued several defendants for administering objectively unreasonable medical care, but the Court dismissed those defendants and claims for failure to effectuate service of process. *See* 9/23/21 Minute Entry (Dckt. No. 47). So, Hayes is the last defendant standing.

favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

And again, under Local Rule 56.1(e)(3), the Court may deem admitted each material fact set out in Defendant's Statement of Facts in light of Plaintiff's failure to respond.

**Analysis**

The Court does not need to wade into the merits of Robinson's claim. Based on the record, Hayes is entitled to summary judgment because Robinson failed to exhaust the available administrative remedies.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). The rule is simple: exhaustion first, lawsuit second.

Based on the plain text of the statute, prisoners and detainees do not have free rein to run straight to the courthouse when something is amiss. The first stop is the facility's dispute resolution process. "To properly exhaust, an inmate 'must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Harris v. Coppes*, 2019 WL 2435847, at *3 (N.D. Ill. 2019) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "The exhaustion requirement is interpreted strictly; thus, a prisoner must comply with the specific procedures and deadlines established by the prison's policy." *Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019) (quotation marks omitted).

8

Failure to exhaust is an affirmative defense, so Hayes bears the burden of proving that Robinson did not properly follow the procedures and deadlines set by WCADF. *Id.* Hayes has met that burden.

There is no dispute that Robinson was familiar with the grievance process at WCADF. *See* Def.'s Mem. in Support of Mtn. for Summ. Judgment, at 4 (Dckt. No. 77). In fact, in another case, this Court determined that he adequately exhausted the available remedies at WCADF. *See Robinson v. Budde*, 2021 WL 1722857, at *3–5 (N.D. Ill. 2021).

Exhaustion is a two-step process, and Robinson tripped over both steps. Based on the record, Robinson filed his grievances too late, without explaining the tardiness. That's misstep number one. The record also shows that he never appealed any of the decisions about his grievances. That's misstep number two.

The timing issue poses the first barrier to Robinson's claims. Remember that Hayes's alleged misconduct occurred on October 26, 2018. And on October 27, 2018, Robinson went to the hospital and returned to WCADF the same day. *See* Def.'s Statement of Material Facts, at ¶ 13 (Dckt. No. 78).

But Robinson didn't file his first complaint about his injured hand until a month after the fact. He raised the issue for the first time on November 30, 2018, far beyond the 48-hour period set by the facility. *See* Pl.'s Response to Mtn. for Summ. Judgment, at ¶ 7 (Dckt. No. 81). He didn't offer any explanation for this lateness, either.

Robinson claims that his first complaint (the one filed on November 30) was timely. *Id.* But November 30 is more than 48 hours after October 26. So, the grievance was late unless Robinson offered an explanation for the delay. *Id.* at ¶ 33.

9

Robinson offered no such explanation. The grievance gave the jail officials no explanation why he waited more than a month to file a grievance. *See* Inmate Request Form 22s, at 12–19 (Dckt. No. 78-3). There is no evidence that Robinson ever asked the facility for help submitting a grievance.

Robinson did not offer any reasons for his late grievance until he responded to the motion for summary judgment. Specifically, he argues that he couldn't submit the grievance in a timely manner because of "the overwhelming pain he suffered from the hand injury." *See* Pl.'s Response to Mtn. for Summ. Judgment, at ¶ 7 (Dckt. No. 81). That argument is not backed up by admissible evidence, so under the Rules, it counts for nothing.

The argument comes too late, with too little evidentiary support. And it is contradicted by the record, too. Even with a hand injury, Robinson could have filed a timely grievance, if not by himself, then with some help. The record shows that Robinson was fully capable of submitting a grievance – and in fact, he did so.

In the days after the injury, Robinson filed grievances about issues other than his hand. For example, on October 30 and 31, he received help filling out the Form 22, and he submitted two grievances to have some personal property returned to him at the facility. *See* Robinson Dep., at 32:5-22, 33:14-23 (Dckt. No. 78-1).

Despite his injured hand, Robinson was able to submit a grievance about his personal property. So he cannot argue that his injured hand prevented him from submitting a grievance about his injured hand. *See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (rejecting a detainee's argument that he could not timely exhaust administrative remedies while in segregation when the record showed that he filed several other grievances during his segregation).

The grievance from November 30 could not get Robinson over the exhaustion hump, even if it was timely (for the sake of argument). Recall, Robinson complained about his broken hand, but did not complain about Hayes in the grievance on November 30. That complaint appeared for the first time in the grievance on January 3 (again, without explanation for the delay). And January 3 is long after October 26. So, the grievance on November 30 could not get Robinson's foot in the exhaustion door, because he didn't complain about Hayes in that grievance.

Robinson offers two last-ditch arguments, but neither carries much weight. First, he claims that the grievance system at WCADF is inadequate and that "in the past," deputies at the jail have mishandled complaints. *See* Pl.'s Response to Mtn. for Summ. Judgment, at ¶ 1 (Dckt. No. 81).

That threadbare allegation isn't enough to overcome the exhaustion requirement. Robinson points to no evidence that officials tampered with his complaints. And he does not offer any evidence that he submitted grievances on time, but the facility wouldn't take them. Without evidence that WCADF officials mishandled any timely grievances, this argument goes nowhere.

Second, Robinson claims that he verbally initiated the grievance process by complaining about Hayes on the day of his injury. *See* Pl.'s Statement of Material Facts, at 2 (Dckt. No. 81). But under the applicable procedures, a detainee must do more than verbally express his grievances. He must fill out the all-important Form 22. *See* Little Aff., at ¶ 10 (Dckt. No. 78-3); Inmate Grievance Procedure (Dckt. No. 72). The grievance needs to be in writing.

Robinson's untimeliness is enough to conclude that he failed to exhaust administrative remedies. But he failed to exhaust administrative remedies for at least one other reason, too. He

11

never filed an appeal at WCADF. Although Robinson filed half a dozen grievances between October 2018 and January 2019, he never appealed any of the facility's responses or decisions. *See* Def.'s Statement of Material Facts, at ¶ 19 (Dckt. No. 78); Little Aff., at ¶ 24 (Dckt. No. 78-3).

An appeal is a separate, necessary step in the WDACF grievance process, but Robinson skipped right over it. As a result, Robinson failed to exhaust administrative remedies by failing to appeal. His "'failure to take a timely administrative appeal within the WCADF system means that he has failed to exhaust his administrative remedies for purposes of § 1997e(a).'" *Harris*, 2019 WL 2435847, at *4 (cleaned up) (quoting *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005)).

In sum, Robinson failed to exhaust available administrative remedies, so the Court grants Defendant's motion for summary judgment. Since the judgment is based on exhaustion, the Court dismisses Robinson's claims without prejudice. *See Fluker v. County of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) ("We have held that dismissals under § 1997e(a) for failure to exhaust must be without prejudice. This is true even if exhausting administrative remedies will prove to be impossible . . . .") (citation omitted).

## Conclusion

For the foregoing reasons, Defendant Hayes's motion for summary judgment is hereby granted.

Date: November 10, 2022

Steven C. Seeger
United States District Judge